# In the United States Court of Federal Claims

No. 11-268P

(Filed: February 20, 2013)

```
*******************************
SECURITYPOINT HOLDINGS, Inc.,        Claim construction;
                                     Markman hearing;
            Plaintiff,               plain and ordinary meaning.

v.

THE UNITED STATES,

            Defendant.
*******************************
```

*M. Roy Goldberg*, Washington, DC, for plaintiff. *Nathaniel Bruno*, Washington, DC, of counsel.

*Lindsay K. Eastman*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, and *John Fargo*, Director, for defendant.

## OPINION

BRUGGINK, JUDGE.

This is a patent infringement case brought pursuant to 28 U.S.C. § 1498 (2006). Plaintiff SecurityPoint Holdings, Inc. ("SecurityPoint") alleges that the Transportation Security Administration ("TSA") has infringed several claims of U.S. Patent No. 6,888,460 ("460 patent") by its use of trays and carts at airport security screening checkpoints. Before the court now are the parties' briefs regarding construction of seven claim terms used in the 460 patent.

## BACKGROUND

SecurityPoint is suing the United States for TSA's unauthorized use of SecurityPoint's invention described in the 460 patent in claims 1-4, 6-9, and

12-15. The 460 patent concerns a system of recycling trays through security screening checkpoints by use of movable carts and the display of advertising on the bins. The patent dates to the provisional patent application filed on July 3, 2002.

Patents are comprised of two types of claims: independent and dependent. Independent claims stand on their own as described in a single claim; dependent claims refer to and add further limitations to an independent claim or claims. *See* 35 U.S.C. § 112 (2006). Here, the 460 patent is comprised of one independent claim and 14 dependant claims.

Claim 1 describes a method:

> positioning a first tray cart containing trays at the proximate end of a scanning device through which objects may be passed, wherein said scanning device comprises a proximate end and a distal end,
>
> removing a tray from said first tray cart,
>
> passing said tray through said scanning device from said proximate end through to said distal end,
>
> providing a second tray cart at said distal end of said scanning device,
>
> receiving said tray passed through said scanning device in said second tray cart, and
>
> moving said second tray cart to said proximate end of said scanning device so that said trays in said second cart be passed through said scanning device at said proximate end.

PX 1 at SP18 (the 460 patent).[1]  Claim 2 teaches that the scanning device is

---

[1] The parties presented their exhibits attached to their respective briefs but numbered the exhibits consecutively from plaintiff's exhibits to defendant's exhibits. They used those same numbers for the joint exhibits attached to their joint claim construction statement. We cite to them as plaintiff's exhibits

"selected from a group consisting of a manual inspection station, an x-ray machine, a conveyor belt, and a particulate matter sensor." *Id.* Claims 3 and 4 add that the trays are "nestable" and have "exposed sides capable of displaying advertising." *Id.* Claim 6 teaches that the "tray carts are adapted to be rollable." *Id.* Claim 7 adds that the method of Claim 1 also includes "the step of repositioning said second tray cart from said distal end to said proximate end." *Id.* Claims 8 and 9 inform that a plurality of the trays are "adapted to receive" various items such as a laptop, camera, purse, coat, wallet, cell phone, and other similar items. *Id.* Claim 12 instructs that a third cart is used in the method described in Claim 1. Claim 13 adds a step in which the third cart "containing a plurality of trays" is substituted to replace the first cart. *Id.* Claim 14 makes the bottoms of the trays "adapted to display advertising" on the interior surface of the trays, and Claim 15 teaches that the trays "are adapted to display a tag number." *Id.*

The parties presented the court with claim construction briefs and a joint claim construction statement. The parties present seven terms for the court's construction. Plaintiff, however, believes that no special construction is required for any of the terms because the plain and ordinary meaning of the terms is sufficient. Plaintiff supplies preferred constructions in the event that we find the plain and ordinary meaning to be insufficient. The following chart presents the parties positions:

| Term | Claim(s) Using Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| tray | 1, 3, 4, 8, 9, 13, 14, 15 | a base with upwardly extending walls | same |
| trays | 1, 3, 4, 8, 9, 13, 14, 15 | a plurality of bases, each with upwardly extending walls | more than one tray of uniform size and shape |

---

("PX") and defendant's exhibits ("DX") as they were first filed.

| | | | |
|---|---|---|---|
| tray cart | 1, 6, 7, 12, 13 | a movable cart capable of holding one or more trays | a movable rack or cart adapted to holding or storing a plurality of trays |
| proximate end | 1, 7 | from the reference point of the initial location of the first tray cart, nearest side, as in the side of the scanning device into which an object to be scanned enters the device | proximal or nearest to; referring to the end of the scanning device where an object enters the device |
| distal end | 1, 7 | from the reference point of the initial location of the first tray cart, farthest side, as in the side of the scanning device from which an object to be scanned exits the device | farthest from; referring to the end of the scanning device where an object exits the device |
| nestable | 3, 4 | capable of fitting compactly or within one another | capable of fitting at least partially within one another |

| adapted | 6, 8, 9, 14, 15 | suited | specially designed or made for a specific purpose |
| receiving said tray passed through said scanning device in said second tray cart | 1 | coming into possession of the tray in the second tray cart after being passed through the scanning device at the distal end of the scanning device | after a tray has passed through the scanning device from the proximate end to the distal end, a second tray cart receives the tray |

*See* Joint Pre-*Markman* Claim Constr. Hr'g Statement 3. The parties agreed upon a package of exhibits in support, which includes the two declarations of plaintiff's expert, Mr. John Huey.[2] Plaintiff did not call Mr. Huey at the *Markman* hearing, which was held on November 14, 2012.

DISCUSSION

Claim construction is the first step in any patent infringement action because it is necessary to understand precisely what the invention is before the trier of fact can determine whether it has been used without permission. "The claims of a patent define the invention . . . ." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). The scope and meaning of the patent is a question of law to be answered by the trial court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-90 (1996).

The claim terms should be construed in accordance with their "ordinary and customary meaning" as understood by "a person of ordinary skill in the art

---

[2] Mr. Huey worked in the security industry for 29 years as a manager, sales representative, and consultant "on issues and projects involving complex security management scenarios." PX 10 ¶ 4. His work emphasized airport security and security checkpoint operations. He is the first named inventor on three patents relating to screening checkpoints.

in question at the time of invention." *Phillips*, 415 F.3d at 1312-13; *Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005). The terms should be read in the context of the whole patent not just the particular claim in which the term appears. *Phillips*, 415 F.3d at 1313. Often the use of a term in one claim will "illuminate the meaning of the same term in other claims." *TDM Am., LLC v. United States*, 85 Fed. Cl. 774, 778-79 (2009) (citing *Phillips*, 415 F.3d at 1314).

When the meaning of a term is not clear or is used idiosyncratically, the court will look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). These sources typically are the words of the patent itself, the patent's specification, and the patent's prosecution history. *See Phillips*, 415 F.3d at 1314-19. These are intrinsic sources and are preferred to extrinsic sources. *See Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003). Extrinsic evidence, such as dictionaries, treatises, and expert testimony, however, may be consulted as necessary in the court's discretion. *Phillips*, 415 F.3d at 1314-19. Extrinsic evidence should be read in view of the intrinsic evidence, *id.*, and cannot be used to vary the meaning of terms contrary to the claim specification and prosecution history, *id.* at 1324.

Plaintiff asks the court to make a finding that the field of relevant art is "security checkpoint screening operations," and thus the person of ordinary skill in the art is "someone who, as of July 3, 2002, possessed experience sufficient to have a comprehensive understanding of security checkpoint screening operations." Pl.'s Opening Markman Claim Constr. Br. 14. Defendant did not offer a specific competing definition other than to argue that it should include operation of other areas of an airport because the patent's claims describe a method applicable outside of airport screening checkpoints. The issue was briefly discussed at oral argument and lightly treated in the briefing.[3] It is not necessary to have a comprehensive understanding of security

---

[3] Defendant did not propose a discrete statement of the field of art or the person of ordinary skill because it believes those concepts are broad and not well suited to definition in one or two sentences. *See* Hr'g Tr. 117-118, Nov. 14, 2012. If it becomes necessary to closely define the field of relevant art, the court is prepared to do so in the future.

checkpoint screening operations in order to understand what is taught by the 460 patent. Because it is unnecessary to our claim construction, and in the absence of a competing discrete definition, we decline to adopt one.[4] We turn now to the terms at issue. The parties agree that the term "tray" is properly understood to mean a "base with upwardly extending walls." Joint Claim Constr. Statement 3. We adopt this proposed construction. It comports with the language and graphical representations in the patent specification. *E.g.*, PX 1 at SP9-SP10 (Figures 11-14), SP14, SP15. Although a court need not construe a term if its plain and ordinary meaning is clear and unambiguous in the language of the claim itself, *see U.S. Surgical Corp v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997), the definition of a "base with upwardly extending walls" makes clear that the term "tray" in the 460 patent has vertically extending walls, which not all trays necessarily would have. We thus adopt the parties' construction because it makes that point clear.

A. Trays

Despite their unanimity on the term "tray," the parties do not agree what the plural of that word means. Defendant seeks to limit the understanding of the term "trays" to only those that are "of uniform size and shape." Joint Claim Constr. Statement 3. It points to the patent specification language to the effect that patent was aimed, at least partially, at alleviating the problem of non-standardized sizing of trays. *See*, *e.g.*, PX 1 at SP13-SP15. Plaintiff responds by directing the court to other areas of the patent specification in which it is contemplated that at least two different sizes of trays would be used. SecurityPoint thus argues that the defendant's construction is inappropriately limiting and is at heart an attempt to support its invalidity contentions.

We decline to add any verbiage to the term "trays." *See Harris Corp. v. IXYS Corp.*, 114 F.3d 1149, 1152 (Fed. Cir. 1997). It simply means more than one tray and is in no need of further construction. Defendant's construction is too limiting. Plaintiff is correct that the specification contemplates two different sizes of trays. *See, e.g.*, PX 1 at SP14 (stating that "the [tray cart] is adapted to receive two differentially sized stacks of trays"),

---

[4] We do not rely on Mr. Huey's testimony in regard to the necessary expertise required in the field or art or upon his testimony in regard to any particular claim term.

SP15 ("The present invention has various sized trays which can be used to hold larger items . . . and a second smaller size which can be used when items such as keys, wallets, [etc.] are to be removed and placed in a tray for inspection."). The claim language itself is unambiguous; the term "trays" simply means more than one tray and requires no special construction.

B.  Tray Cart

Plaintiff proposes that the term "tray cart" means "a movable cart capable of holding one or more trays." Defendant offers that it is "a movable rack or cart adapted to holding or storing a plurality of trays." The parties thus agree that a tray cart is movable, and we concur. Whether the patent teaches that a "tray cart" can be either a cart or a rack and whether a tray cart must be adapted to storing as well as holding are closer questions.

1.  "Cart" Does Not Mean "Rack"

Defendant insists that "cart" and "rack" can be read interchangeably in the 460 patent. It points to the use of the word "rack" in the patent specification, *see* PX 1 at SP13, SP15, and the Petition to Make Special from the patent's prosecution history, *see* PX 3 at SP122 ("the invention includes both uniform tray sizing so that trays may be easily stacked while remaining accessible and specially-designed tray racks . . . to store empty trays in a organized manner"). Defendant also notes that prior art cited during patent prosecution used the word "rack." *See* DX 20 at G314-G315 (Patent No. 5,586,493, Paper Recycling Rack). Defendant thus argues that "cart" should be read to encompass "rack" because the two words are used interchangeably in the patent specification, prosecution history, and cited prior art.

Plaintiff points out that the word "rack" is conspicuously absent from the language of the 460 patent's claims. Its argument is that when the language of the claim is unambiguous then "consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); *see also Phillips*, 415 F.3d at 1315. SecurityPoint further argues that the use of the word "cart" without the word "tray" preceding it, which appears several times in the patent specification, shows that the patent contemplates a "cart" and not a "rack." *See, e.g.*, PX 1 at SP17-SP18. To the extent that there is any ambiguity, plaintiff asks the court to consider the testimony of its expert, Mr. John Huey. Mr. Huey, in his first

declaration, testified that a "tray cart" would be understood by a person of ordinary skill in the art to mean a movable cart and not a rack. *See* PX 10 ¶¶ 17-18, 21. He further testified that a "rack" would have been understood to mean a "device with shelves into which trays could be slid horizontally, which is not taught by the '460 Patent.'" *Id.* ¶ 18. A cart, on the other hand, "would have been considered a device onto which objects could be stacked, which is taught throughout the '460 Patent.'" *Id.*

We begin with the strong presumption that the terms used in a claim carry their ordinary meaning, *CSS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002), and the Federal Circuit's instruction that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1315. What is clear from the claim language is that the essential function of the tray cart is that it is movable and suited for holding trays. There is one diagram of a tray cart in the patent. *See* PX 1 at SP7 (Figure 9). The claim language itself, however, is devoid of any particulars as to how the tray carts should be comprised other than to teach that they should be "adapted to be rollable," PX 1 at SP18 (Claim 6), and should have a "tray platform further comprising a resilient member," *id.* (Claim 11).[5] Because the claims themselves are focused narrowly on the carts being rollable and capable of holding trays, we decline to add a word not found in the claim language. A "tray cart" is a "cart" suited to rolling and holding trays, nothing more. That brings us to the next point of contention: holding versus holding *and* storing.

2. The Claims Do Not Require That a Tray Cart Be Adapted to Storing

Defendant asks that we construe the "tray cart" as being "adapted to holding or storing a plurality of trays." It cites to language in the specification identifying the need "for a system for a security area for moving the trays from a starting position to an ending position which allows the trays to be efficiently utilized, gathered, and stored to be later used again." PX 1 at SP13. Plaintiff urges the court to consider the use of the words "store," "storing," and "stored"

---

[5] Claim 11 is not otherwise at issue in this opinion but is relevant in understanding the terms as used elsewhere in the patent. The court should read the claims together "[b]ecause claim terms are normally used consistently throughout the patent." *Phillips,* 415 F.3d at 1314.

in the patent specification, in context, to describe a transient holding function. We agree.

The 460 patent describes a method whereby trays are cycled through a security checkpoint by use of movable tray carts. Our analysis of the claim language concerning the makeup of the tray carts above is equally applicable here. The function of the carts is to hold trays until the time comes to cycle the tray cart to the next position in the method. Any storing function is only temporary and the trays are in a constant movement from one tray cart to the next via the scanning device. Defendant's addition of the word "storing" would either be entirely surplusage because the same function is described in the word "holding," or it as an attempt to read in a limitation not contemplated by the claim language. We construe the term "tray cart" to mean a "movable cart capable of holding one or more trays."

C. Proximate and Distal End

The parties offer competing definitions for the terms "proximate end" and "distal end." Plaintiff offers that the proximate end is "from the reference point of the initial location of the first tray cart, nearest side, as in the side of the scanning device into which an object to be scanned enters the device." Jt. Claim Constr. Statement 3. The distal end then is "from the reference point of the initial location of the first tray cart, farthest side, as in the side of the scanning device from which an object to be scanned exits the device." *Id*. Defendant asks the court to construe the proximate end as "proximal or nearest to; referring to the end of the scanning device where an object enters the device" and the distal end as "farthest from; referring to the end of the scanning device where an object exits the device." *Id*.

We begin with the words of the claims. Claim 1 teaches that the patent is for a method in which the "first tray cart containing trays" is positioned "at the proximate end of a scanning device . . . wherein said scanning device comprises a proximate end and a distal end." PX1 at SP18. A tray is then removed from the first cart, passed through the scanning device "from said proximate end through to said distal end," after which it is received in a second tray cart that is "at said distal end of said scanning device." *Id*. The last step of Claim 1 is the moving of the second tray cart to the "proximate end of said scanning device so that said trays in said second cart be passed through said scanning device at said proximate end." *Id*. Claim 7 adds that "[t]he method of claim 1, further comprising the step of repositioning said second tray cart

10

from said distal end to said proximate end." *Id*. We have attached a diagram at the end of this opinion that appears on the first page of the patent. It represents the generic layout taught by the 460 patent method.[6]

The parties do not meaningfully disagree as to which end is referred to by "proximate" and "distal." The referent is the scanning device. The "proximate end" is referring to the end of the scanning device where an object enters the device. Likewise, the "distal end" is referring end of the scanning device where an object exits the device. Plaintiff's construction is potentially confusing and adds surplusage not required to understand what the reference point is. Defendant's construction best reflects the ordinary meaning of the words as used in Claims 1 and 7.

We also note from the parties briefing that defendant reads in to its construction of "proximate end" and "distal end" a seeming limitation in the locations of the tray carts as taught by the patent. Defendant views its definition of an "end" to be a precise point as compared to a more general area at the extent or boundary of something. We do not share defendant's understanding of its construction; it implies a level of precision that we find generally lacking in the 460 patent. The patent describes a method for cycling trays through a scanning device at a security check point. It is not dependent upon a great deal of precision in the location of the instrumentalities involved. Perhaps if "proximate end" and "distal end" were used to describe the actual physical entry and exit point of the screening device itself, defendant's understanding would be natural. Here, however, the claims use the terms to describe the location of tray carts external to the device.[7] As it is, "proximate end"means "proximal or nearest to; referring to the end of the scanning device where an object enters the device." "Distal end" means "farthest from; referring to the end of the scanning device where an object exits the device." Nothing further is implied by those definitions.

---

[6] Claims 12 and 13 teach the addition of the third tray cart seen in the diagram attached at the end of this opinion.

[7] Claim 1 also refers to the proximate and distal ends of the scanning device itself when it makes clear that a "scanning device comprises a proximate end and a distal end." PX1 at SP18. That does not change our view of the use of the terms in describing the positioning of the tray carts as discussed above.

11

D. Nestable

Claim 3 states that a "plurality of said trays [used in Claim 1] comprises nestable trays." DX 1 at SP18. Claim 4 explains that the "nestable trays" are comprised of "exposed sides capable of displaying advertising." The parties disagree as to what "nestable" means. Per plaintiff, "nestable" means "capable of fitting compactly within one another."[8] Joint Claim Constr. Statement 3. Defendant offers that "nestable" means "capable of fitting at least partially within one another." *Id.*

At first glance it appears that both definitions are encompassed by the plain meaning of the term "nestable." What is important, however, is that defendant's construction would, as plaintiff points out, encompass a situation not taught by the patent. The patent specification contains the following examples of how the trays are to stack: "stacked inside one another," PX 1 at SP16; "be easily stacked within one another," *id.*; "nested within one another," *id.*; and "placed within one another," *id.* This tracks with plaintiff's construction of trays fitting "compactly within one another."

Defendant's construction of "capable of fitting at least partially within one another" is true of the examples quoted above, but is also true of other situations that would not be consistent with the language used in the specification. Plaintiff's example of applying defendant's definition is that "a refrigerator is capable of fitting at least partially within one shoebox." Pl.'s Reply in Supp. 21. If we assume two sides of the shoebox are removed, that point is well taken. As mentioned earlier, the specification contemplates at least two different sized trays, one generally larger than the other. The larger tray might be capable of fitting only partially within the smaller tray, but that is clearly not what the method contemplates. We construe "nestable" to mean

---

[8] Plaintiff originally proposed the definition to be "capable of fitting compactly or within one another." At oral argument, the court inquired as to why plaintiff's definition included the word "or" and counsel replied that its definition attempted to capture both that the trays fit within one another and that they do so snugly. *See* Hr'g Tr. 45. The use of "or" in the definition creates a logical disjunction whereby either or both statements can be true. The meaning sought by plaintiff is better served without the word "or" because plaintiff intends that "nestable" means that the trays fit both compactly and within one another.

12

"capable of fitting compactly within one another."

E. Adapted

The parties disagree as to the meaning of the term "adapted" as used in claims 6, 8, 9, 14, and 15. Those claims teach various attributes of the tray carts and the trays themselves. Claim 6 states that "tray carts are adapted to be rollable." PX 1 at SP18. Claim 8 instructs that a "plurality of said trays are adapted to receive an item selected from a group [and examples are given]." *Id.* Claim 9 is the same as Claim 8 except that it describes items from a group of smaller items. Claim 14 teaches that the "trays are adapted to display advertising on an interior bottom surface." *Id.* Claim 15 details that the trays "are adapted to display a tag number." *Id.*

Defendant understands the term "adapted" to mean "specially designed or made for a specific purpose." Jt. Claim Constr. Statement 3. Plaintiff believes the term "adapted" is synonymous with the term "suited." We must, in essence, decide whether the degree to which the tray carts and trays are specially designed for the purpose they are used for in the 460 patent method is necessary to the claim. We find that the claim uses "adapted" as akin to "suited," as plaintiff proposes.

Although it is not clear at this point what difference it would make whether the trays are "specifically designed" to receive certain items or merely "suited" to do so, defendant's construction is unnecessarily limiting and ought not be read into the claims. Nothing in the specification or claims themselves lead us to conclude that the tray carts must be specially designed to roll or that the trays be specially designed to hold certain sized items, display advertising on the bottom, and display tag numbers. That the tray carts can roll without problem or additional modification and that the trays can and do hold certain sized items, can display advertising on the bottom, and a tag number without problem or additional modification is what is taught by the patent. This is best encompassed in the meaning of the word "suited" as proposed by plaintiff without the further limitation in the construction offered by defendant. The plain and ordinary meaning of "adapted" is "suited."

F. Receiving The Tray In The Second Tray Cart

The last disagreement between the parties concerns the meaning of the term "receiving said tray passed through said scanning device in said second

13

tray cart," which appears in Claim 1 of the 460 patent. Plaintiff proposes to explain it as "coming into possession of the tray in the second tray cart after being passed through the scanning device at the distal end of the scanning device." Jt. Claim Constr. Statement 4. Defendant offers that it means "after a tray has passed through the scanning device from the proximate end to the distal end, a second tray cart receives the tray." *Id.* We view these as distinctions without a difference.

The language at issue in this term is describing a step in the screening process as taught by the 460 patent. After a tray has been taken from the first tray cart, it is then passed through the scanning device, and received into the second tray cart positioned at the other end of the scanning device, which the patent describes as "receiving said tray passed through said scanning device in said second tray cart." PX 1 at SP18. Nothing further is necessary to understand what is being taught. The Federal Circuit has warned against adding "meaningless verbiage to the definition of the claimed invention." *Harris Corp.*, 114 F.3d at 1152; *see also Hastings v. United States*, 78 Fed. Cl. 729, 732-34 (2007) (declining to construe a term where it would not add to the understanding of the patent). We thus decline to construe the term because it is unnecessary to understand the plain and ordinary meaning of the claim.

CONCLUSION

The following table summarizes our holdings as to each term:

| The Patent Term | The Court's Construction |
|---|---|
| tray | a base with upwardly extending walls |
| trays | no construction |
| tray cart | a movable cart capable of holding one or more trays |
| proximate end | proximal or nearest to; referring to the end of the scanning device where an object enters the device |

tray cart," which appears in Claim 1 of the 460 patent. Plaintiff proposes to explain it as "coming into possession of the tray in the second tray cart after being passed through the scanning device at the distal end of the scanning device." Jt. Claim Constr. Statement 4. Defendant offers that it means "after a tray has passed through the scanning device from the proximate end to the distal end, a second tray cart receives the tray." *Id.* We view these as distinctions without a difference.

The language at issue in this term is describing a step in the screening process as taught by the 460 patent. After a tray has been taken from the first tray cart, it is then passed through the scanning device, and received into the second tray cart positioned at the other end of the scanning device, which the patent describes as "receiving said tray passed through said scanning device in said second tray cart." PX 1 at SP18. Nothing further is necessary to understand what is being taught. The Federal Circuit has warned against adding "meaningless verbiage to the definition of the claimed invention." *Harris Corp.*, 114 F.3d at 1152; *see also Hastings v. United States*, 78 Fed. Cl. 729, 732-34 (2007) (declining to construe a term where it would not add to the understanding of the patent). We thus decline to construe the term because it is unnecessary to understand the plain and ordinary meaning of the claim.

CONCLUSION

The following table summarizes our holdings as to each term:

| The Patent Term | The Court's Construction |
|---|---|
| tray | a base with upwardly extending walls |
| trays | no construction |
| tray cart | a movable cart capable of holding one or more trays |
| proximate end | proximal or nearest to; referring to the end of the scanning device where an object enters the device |

| distal end | farthest from; referring to the end of the scanning device where an object exits the device |
|---|---|
| nestable | capable of fitting compactly within one another |
| adapted | suited |
| receiving said tray passed through said scanning device in said second tray cart | no construction |

The deadlines for discovery as set out in our March 27, 2012 order, as modified by our order of December 10, 2012, are hereby amended to reflect that proponent's expert reports are due by March 8, 2013, and rebuttal expert reports are due by April 10, 2013. We will convene a status conference to discuss further modification of the schedule.

        s/ Eric G. Bruggink
        ERIC G. BRUGGINK
        Judge