# In the United States Court of Federal Claims

No. 11-268C
(Filed: May 18, 2018)

*********************************

SECURITYPOINT HOLDINGS, INC.,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant.*

*********************************

|  |
|---|
| Patents; Standing; Ownership; Assignment; Motion to Dismiss; Collateral Estoppel; Judicial Estoppel. |

*Bradley C. Graveline* and *Manish K. Mehta*, Chicago, IL, with whom was *Laura M. Burson*, Los Angeles, CA, for plaintiff.

*Gary Hausken*, Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Chad Readler,* Acting Assistant Attorney General, and *Alice S. Jou* and *Lee Perla*, for defendant.

OPINION

BRUGGINK, Judge.

This is a patent infringement action brought pursuant to 28 U.S.C. § 1498 (2012). Plaintiff, SecurityPoint Holdings, Inc. ("SecurityPoint"), alleges that the Transportation Security Administration ("TSA") has infringed claims 1-4, 6-9, and 12-15. of U.S. Patent No. 6,888,460 ("460 patent") by employing similar or identical means and method for recycling trays and carts at airport security screening checkpoints. The 460 patent teaches a system of recycling trays through security screening checkpoints by use of movable carts and also teaches the display of advertising and identification tags on the trays. The patent's priority date is July 3, 2002, which is when the inventor, Mr. Joseph Ambrefe, first filed a provisional patent application at the Patent and Trademark Office ("PTO"). The 460 patent was issued on May 3, 2005. Defendant has stipulated to infringement at various airports around the

country, and we held in 2016 that the patent was valid.   *SecurityPoint Holdings, Inc., v. United States*, 129 Fed. Cl. 25 (2016).

Seven years after the suit was initiated, defendant now brings a motion to dismiss for lack of standing.  It asserts that the assignment of the patent application from the inventor, Mr. Ambrefe, to plaintiff's predecessor-in-interest, SecurityPoint Media, Inc., was either ineffective and void or succeeded in transferring ownership to a non-party.  In addition, and in the alternative, it contends, without dispute from plaintiff, that a different entity has been licensing the 460 methodology and indeed has asserted the patent in litigation against other entities.  It thus argues that plaintiff has no standing to sue or should be estopped from claiming rights to the patent in this suit. Oral argument was held on May 1, 2018, after which we permitted certain materials to be submitted by both parties to be added to the record.

We are sympathetic with the government's motion.  Over time, Joseph Ambrefe has created a virtual mare's nest of entities of similar name, all connected to his patented screening methodology.  The actions of these entities and of Mr. Ambrefe himself, often through counsel, certainly raise questions as to the owner of the patent-in-suit.  To deny the motion to dismiss on either standing or estoppel grounds requires the court to ignore the prodigious proliferation of entities and accept the argument that the current state of confusion is result of a cascading series of innocent mistakes.  Nevertheless, that is where we arrive, for the reasons we explain below.

## BACKGROUND

During the pendency of the patent application, the inventor, Mr. Ambrefe, executed an assignment to Security Point Media, Inc., asserted to be a Pennsylvania company doing business at 847 West Miner Street, West Chester, PA 19382.  As best the parties have been able to determine, there was not then and there never has been a corporation by that name at any address.  In an affidavit submitted to oppose the motion, Mr. Ambrefe tells the court that, instead, there was a limited liability corporation in Pennsylvania by the name of SecurityPoint Media, LLC, doing business at 874 West Miner Street, West Chester, PA 19832.  The principal of the latter entity was Mr. Ambrefe.  It was Mr. Ambrefe's intention to make the assignment to the LLC.  The mistake was apparently that of his lawyer, Mr. Don J. Pelto**.**  The mistaken assignment was recorded at the Patent Office.

The current plaintiff, SecurityPoint Holdings, Inc., is the successor-in-interest to SecurityPoint Media, LLC, i.e., not to the nominal assignee.   In addition, it turns out that a different entity, Security Point Media, LLC (Florida) (hereafter, "New Media"), has been entering into assignments and leases of the 460 methodology and indeed has been involved in litigation against other entities in which it has asserted ownership of the patent.  Plaintiff concedes that New Media does not own the patent.[1]

One can either attempt to trace the lineage of the patent or attempt to reverse engineer the plaintiff.  According to the government, neither exercise helps the plaintiff.  The first can be very brief: Mr. Ambrefe assigned the patent to Security Point Media, Inc., which either never existed or did not, in any event, assign the patent to any other entity.  Security Point Media, Inc. is not the plaintiff, hence, end of story.

The second approach begins with plaintiff, Security Point Holdings, Inc., and scrolls back through a series of assignments or name changes, none of which end at the nominal assignee.  On October 28, 2011, Security Point Holdings, Inc. became the successor-in-name to Security Point Holdings, LLC after the company reorganized in Delaware.  Before that, on January 16, 2007, Security Point Holdings, LLC had became the successor-in-name to SecurityPoint Media, LLC (Florida).   Before that, on June 1, 2006, SecurityPoint Media, LLC (Pennsylvania) had moved its incorporation and become SecurityPoint Media, LLC (Florida).  SecurityPoint Media, LLC was initially incorporated in Pennsylvania on June 7, 2002.

Plaintiff responds that it was to this last entity that Mr. Ambrefe intended to make the November 28, 2003 assignment. Plaintiff asserts that the initial mistake was a scrivener's error in three respects.  There should not have been a space between "Security" and "Point;" the abbreviation for the corporate form "Inc." should have been "LLC;" and the address number should be transposed from "847" to "874."  In short, it pleads sloppiness rather than ill intent.  Plaintiff points out that, on September 29, 2011, a "Corrective Worldwide Assignment" was executed from Mr. Ambrefe to SecurityPoint Media, LLC, the then plaintiff in this suit.  It concedes that, even if the corrective assignment were effective, it would not help plaintiff avoid the

---

[1] Although, at oral argument, counsel offered, without direct proof, that it was an implied licensee.

motion to dismiss, as this action had been commenced prior to the corrective assignment.

Defendant replies by pointing out that the scriveners error, if that's what it was, was repeated at least five times. On March 4, 2005, Mr. Pelto paid the issue and publication fees for the 460 patent in the name of Security Point Media, Inc. and the patent was issued in that name on May 2, 2005. Filings also were made at the Patent Office in the name of this same entity on at least four occasions with respect to other patents invented by Mr. Ambrefe. In defendant's view, the court should view these actions as confirming Mr. Ambrefe's original intent to convey the patent to the Pennsylvania corporation that bears no relation to the current plaintiff.

In addition to these assignments or name changes, on January 17, 2007, Mr. Ambrefe created New Media as a Florida LLC, along with two other subsidiaries, SPM Productions, LLC, and SPM Operations, LLC. The day before, on January 16, a lawsuit had been initiated in federal district court in Florida in the name of SecurityPoint Media against the Adason Group, LLC. in the Middle District of Florida. That suit was withdrawn and re-filed in the same name in March 2007. In that suit, New Media alleged ownership of the patent in suit and infringement of that patent by Adason. Plaintiff concedes that both filings contained a mistaken representation, in that New Media did not own the patent. This mistake has been repeated on several subsequent occasions in that New Media repeatedly has been executing licenses based on the asserted ownership of the '460 methodology. Plaintiff suggested at oral argument, without evidence, that these actions may have been taken pursuant to an implied license. Mr. Ambrefe explained in a supplemental declaration that New Media existed and exists now only as the operating arm of SecurityPoint Holdings, and, given his control of both entities, he did not and does not distinguish between them. This accounts for New Media's identification in the Adason action as the patent holder, according to Mr. Ambrefe's second declaration.

## DISCUSSION

A. The Motion to Dismiss for Lack of Standing

Defendant does not have to show that it was prejudiced by a mistake. Plaintiff bears the burden of establishing jurisdiction. Here, defendant can point to a nominal assignment to an entity apparently not a predecessor-in-

interest to plaintiff. Plaintiff thus must prove that it was assigned the patent-in-suit. SecurityPoint Media, Inc. only steps into the line of succession if the court deems the original assignment to have been to SecurityPoint Media, LLC.

The parties agree that Pennsylvania law controls the interpretation and correction of patent assignments. *See MyMail, Ltd. v. Am. Online, Inc.*, 476 F.3d 1372, 1375 (Fed. Cir. 2007). And both parties agree that, in Pennsylvania, assignments are interpreted as contracts. Defendant contends that plaintiff therefore must first go to a Pennsylvania state court, or a federal district court acting under diversity jurisdiction, to correct the assignment. We disagree. There is no question that the court has subject matter jurisdiction under 28 U.S.C. § 1498. That distinguishes the present circumstances from *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571 (Fed. Cir. 1997), on which defendant relies. That action was commenced in Texas state court by an asserted patent holder against an assignee. The action was removed to district court, and on appeal, the question before the Federal Circuit was whether the action could have been initiated in the first instance under patent laws in district court. The circuit concluded that it could not because it did not "arise under the patent laws." *Id.* at 1579. The action was fundamentally one in contract, but plaintiff could not make the assertion that it owned the patent without first having a Texas state court declare the assignment to the defendant void. *Id.* at 1574. The court drew the distinction between an assignment which had built within it a rescission clause and one which did not. The assignment in the case in suit did not have such a provision and the plaintiff had no colorable title because it could not simply unilaterally declare the assignment void. *Id.* at 1577.

We view the present circumstances in a different light. The *Jim Arnold* court distinguished the result there from a decision by the court in *Air Products & Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559 (Fed. Cir. 1985) (citing *Luckett v. Delpark, Inc.*, 270 U.S. 496 (1926)). where the court taught that

> A district court, however, is not precluded in patent suits from resolving non-patent questions, and the fact that a question of contract law must be decided prior to reaching the infringement question does not defeat federal subject matter jurisdiction. That resolution of a question of state law may render federal questions moot does not deprive a federal court

of subject matter jurisdiction where the plaintiff bases his claim upon, and seeks remedies under, the patent laws, even where the complaint anticipates a defense of license.

*Id.* at 1563–64 (citing *Luckett*, 270 U.S. at 510).   We view the controlling principle to be that, if the trial court is presented with a colorable claim of patent ownership, and the suit is fundamentally one for damages under patent laws, the court may deal with the contract question.

We view the present circumstance as within the intent of *Air Prod. & Chemicals, Inc.*   There is no assertion by the United States that it has rights under an assignment.   Plaintiff did not anticipate at the time it filed suit that title would be challenged; indeed it took seven years for the issue to surface. The entire complaint is one for infringement under the patent laws.   We therefore conclude that the issue of assignment validity is properly before the court, albeit controlled by state law.

At the outset, we decline to strike the Ambrefe affidavit, as defendant suggests.   Mr. Ambrefe plainly is interested in the outcome, but given his central role in these activities, it is hardly fair to treat his explanation as tainted to the point that it should be ignored.[2]   This leaves us, at least as to the initial assignment, with a plausible explanation of what happened.   The names are similar and the mistake appears to be the result of carelessness, not an intent to deceive.

We thus have parol evidence of a mistake.   Defendant urges us to

---

[2] Plaintiff also submitted a declaration by plaintiff's co-founder Doug Linehan. He was then the Vice President of SecurityPoint Media, LLC.   In it, he avers much the same as Mr. Ambrefe did in his: that any and all uses of the term "Security Point Media, Inc." were clerical errors, including in the initial assignment of the patent from Mr. Ambrefe.   He also states that neither he nor Mr. Ambrefe ever incorporated an entity by that name in any state or other country.   After oral argument, we allowed both parties to submit supplemental factual materials to complete the record on the issue of standing.   Plaintiff also submitted the declaration of Jennifer Blake, who is employed by Telos Legal Corporation, a corporate services firm.   Ms. Blake represents that she conducted a business record search in all 50 states and the District of Columbia and did not find any entity named "Security Point Media, Inc."

ignore this fact, asserting that the court cannot act unless there is a patent ambiguity in the assignment.   There is no apparent ambiguity in the abbreviation "Inc."  We are not asked to construe it to mean "LLC."  The two types of entities are different.  The ambiguity in the name as a whole is, in that sense, latent, and does not arise without consideration of parol evidence. Pennsylvania, however, permits the creation of a latent ambiguity by parol evidence under limited circumstances:

> a contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity, whereupon extrinsic evidence may be admitted to establish the correct interpretation. However, a claim of latent ambiguity must be based on a "contractual hook": the proffered extrinsic evidence must support an alternative meaning of a specific term or terms contained in the contract, rather than simply support a general claim that the parties meant something other than what the contract says on its face. In other words, the ambiguity inquiry must be about the parties' "linguistic reference" rather than about their expectations.

*Bohler-Uddeholm America, Inc. v. Ellwood Group*, 247 F.3d 79, 96 (3d Cir. 2001) (applying Pennsylvania law); *see also Koplin v. Franklin Fire Ins. Co. of Philadelphia*, 44 A.2d 877, 879 (Pa. Super. Ct. 1945) (parol evidence allowed where an instrument of writing contains a reference to a particular person but it is shown by extrinsic evidence that there are two or more persons to whom the description in the instrument might properly apply).

Pennsylvania also follows the rule of "*idem sonans*," which one of its courts explained as follows:

> The general rule of idem sonans has been accurately and clearly stated to be "that absolute accuracy in spelling names is not required in legal documents or proceedings, either civil or criminal; that if the name as spelled in the document though different from the correct spelling thereof, conveys to the ear when pronounced according to commonly accepted methods, a sound practically identical with the sound of the correct name as commonly pronounced, the name as thus given is a sufficient designation of the individual referred to, and no advantage can

be taken of the clerical error:"

*Delaney v. Becker*, 14 Pa. Super. 392, 397 (1900). The question there was whether creditors of defendant Becker should have been on notice of a judgment against a man named "Baker." The court held that the creditors were not diligent in protecting themselves. They should have searched for similar sounding judgments.

There was a different result in *Mercer v. Santa Lucia of Hillsville*, 82 Pa. D. & C. 233 (Pa. Com. Pl. 1953). The question there involved competing liens to entities with similar sounding names. One was Societa Devoti di Santa Lucia of Hillsville, PA. At the time there was no such entity. The other was against Society San Lucia of Hillsville:

> In the light of these principles can it be said that any title passed to Societa Devoti di Santa Lucia of Hillsville, Pa., by the deed of New Castle Lime and Stone Company? Here it is argued that a similarity of names and the effect of translating from the Italian to the English operates in favor of those who claim under the Societa Devoti di Santa Lucia. But the discrepancy here seems too great. The names do not sound alike; the principle of idem sonans does not help: *Delaney v. Becker*, 14 Pa. Superior Ct. 392, 397. The fictitious name contains two more words than the real name. There must be fundamental similarity of names; this is lacking here.

*Id.* at 241.

In *McCarthy Bros. & Wilson v. Schmitt*, 6 Pa. D. & C. 147 (Com. Pl. 1925), the court corrected an option: "The only issue in the case arises from the fact that, in the exercise of the option given to the plaintiff in the lease of July 10, 1922, the plaintiff, instead of referring to itself as 'McCarthy Bros. & Wilson, Inc.,' designated itself as 'McCarthy Bros., Inc.'" *Id.* at 147.

> It is inconceivable that the failure of the plaintiff to use the words "& Wilson" as a part of its corporate title should be held to deprive it of the important substantive rights which it seeks to exercise.
> . . . .
> As stated in Bower v. State Bank, 5 Ark. 234: "It has long since

8

> been determined that acts done by, or to, a corporation by a name substantially its true name, though differing therefrom in words and syllables, are valid, and upon this principle many cases have been decided," calling attention to the case of Lynne Regis, 10 Coke, 122b, 77 Reprint, 1111.
>
> . . . . a departure from the strict style of the corporation will not avoid its contract if it substantially appear that the particular corporation was intended; and that a latent ambiguity may, under proper averments, be explained by parol evidence . . . .

*Id.* at 147-48 (citing *Berks and Dauphin Turnpike Rd. v. Myers*, 6 S & R 12 (1820)). The law has in Pennsylvania has long been that misnomer of corporate title does not render a contract void as a matter of law. *Berks and Dauphin Turnpike Rd.*, 6 S & R at 17.

Although it involves California law, we think Pennsylvania allows us to resolve the present case in the same way that the district court addressed a similar problem in *Shower Enclosures America, Inc. v. BBC Distribution Corp.,* No. 3:15CV627, 2016 WL 3031081 (N.D. Ind. May 27, 2016) (applying California law). There, the district court held that it could take into account parol evidence to identify a name problem. The patent assignee in that case was "Shower Enclosures, Inc." The actual name of the company was "Shower Enclosures America, Inc." The court held that mere typographical errors in assignments will not negate standing where the intent of the parties is clear. *Id.* at 2. To similar effect are *Sw. eFuel Network, L.L.C. v. Transaction Tracking Techs., Inc*., 2009 WL 4730464, at *2 (E.D. Tex. 2009)(signatory's signing capacity corrected); *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1191 (S.D. Ala. 2007) (court allowed unspecified "glitch" in assignment to be corrected); *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 211, 215 (D. Del. 2006) ("the Greenspan parties always intended to assign their rights to the '062 patent to the Greenspan Corporation . . . and, but for their mistaken use of the term 'Company,' they would have done so."). *See also Speedplay, Inc. v. Bebop, Inc*., 211 F.3d 1245, 1251 (Fed. Cir. 2000) (incorrect patent number deemed corrected in license.)

Nor has the government suggested that it or anyone was prejudiced by

the difference in names.[3]  There is no evidence, for example, of other litigation in the name of Security Point Media, Inc.  Nor has either party been able to find an entity named Security Point Media, Inc.  The latter point in particular we find to be circumstantial support for Mr. Ambrefe's declaration.  In sum, we construe the assignment to be to plaintiff's predecessor-in-interest, SecurityPoint Media, LLC.

B.  Is Plaintiff Barred By Collateral or Judicial Estoppel?

Defendant also asserts that plaintiff should be collaterally and judicially estopped from asserting ownership of the 460 patent in this suit because a related entity, New Media, also controlled by Mr. Ambrefe, succeeded in obtaining a consent judgment against the Adason Group for infringement of the same patent.  The facts are undisputed.  Plaintiff concedes that New Media successfully sued Adason for patent infringement.  Indeed, in order to enforce its judgment, it pursued Adason in the latter's bankruptcy proceeding in bankruptcy court in Georgia.   The district court in Florida, in entering judgment for New Media, recited that New Media owns the 460 patent, although that issue was not disputed.

A.  Collateral Estoppel

Collateral estoppel is a judicially created doctrine applied by the courts to protect the finality of judgments by ensuring that parties are not able to collaterally attack issues decided previously in other courts.  *See generally Montana v. United States*, 440 U.S. 147, 152 (1979).  The Federal Circuit applies a four part test for collateral estoppel:  (1) the issue is identical to one decided in the first action; (2) it was actually litigated in the first action; (3) resolution of the issue was essential to final judgment in the first action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action. *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001).

We can assume that New Media is sufficiently aligned with plaintiff that plaintiff would be bound by New Media's actions.  Nevertheless, we find collateral estoppel a poor fit for the present circumstances.  There is no

---

[3] Defendant in fact stipulated to plaintiff's ownership of the patent in 2015. ECF No. 188.

question that New Media's ownership of the 460 patent was alleged by the complaint, but it was not disputed. Defendant submits that, when a fact is pled and the court enters a judgment on stipulated facts, that fact has been adjudged and thus litigated for purposes of collateral estoppel. Defendant cites the Restatement of Judgments and the Federal Circuit's opinion in *Envosys LLC v. Nextel Communications, Inc.*, 614 F.3d 1333 (Fed. Cir. 2010), for support.

"When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section." Restatement (Second) of Judgments § 27 comment d (1982). We find that the neither the judgment against Adason nor New Media's attempts to enforce it in bankruptcy proceedings properly submitted the issue for determination within the meaning of the restatement quoted above. As the Seventh Circuit stated, "[t]his requirement is generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it." *Cont'l Can Co., U.S. A. v. Marshall*, 603 F.2d 590, 596 (7th Cir. 1979). Adason never challenged New Media's standing to assert the patent against it, and the district court thus had no occasion to decide the issue.

In the *Envosys* case cited by defendant, the Federal Circuit found that the inventor's divorce proceedings did have a preclusive effect because ownership of community property, including a patent obtained during the marriage, under California law, is a necessary issue to a petition for dissolution of marriage. Thus, the court found that issue was litigated and decided by the state court despite the fact that the court only adopted the representation of the parties that no community property existed submitted in a joint petition for divorce. *Envosys LLC*, 614 F.3d at 1342-43. We do not find the suit against Adason to be analogous.

We need not address the other elements of collateral estoppel.[4] The issue of ownership was not actually litigated and thus the doctrine does not bar

---

[4] We also cannot say whether the issue was essential to the district court's judgment against Adason. Had New Media been presented with a challenge to its standing in that suit, it may have proved a license to assert the patent against Adason. *Cf. Stephen Slesinger, Inc. v. Disney Enterprises, Inc*., 702 F.3d 640, 649 (Reyna, J. dissenting) (determination of whether transfer of rights in a trademark was an assignment was not necessary because a license might have been granted and had the same effect for purposes of standing).

plaintiff here.

B.  Judicial Estoppel

Judicial estoppel is aimed at preserving the integrity of the judicial process by preventing parties from taking contradictory positions in different suits.  Once a party has taken a position during litigation, it can be estopped from taking a contradictory one in a later suit.  *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001).  The Supreme Court recognized that the doctrine is not reducible to a simple test, but stated that certain factors are normally considered.  *Id.* at 750.  They are: 1) the party's current position must be clearly inconsistent with its prior position; 2) whether the earlier court's acceptance of a party's prior position would give the impression that the court then or now was misled; and 3) whether the party taking the inconsistent position would gain an unfair advantage or "impose an unfair detriment on the opposing party."  *Id.* at 750-51.  The decision of the trial court whether to invoke the doctrine is discretionary.  *Data General Corp. v. Johnson*, 78 F.3d 1556 (Fed. Cir. 1996).

Defendant urges that all of those questions should be answered in favor of invoking the doctrine here.  Defendant alleges that plaintiff and its related entities have "played fast and loose" with four different federal courts and thus misled at least one of them by taking inconsistent positions regarding ownership of the 460 patent.  Defendant suggests that judicial resources have been wasted by plaintiff's inconsistent positions.  The government finds itself at a disadvantage because allowing plaintiff, or affiliated entities, to take differing positions regarding ownership of the patent "is contrary to the law on patent standing."  Def.'s Mot. to Dismiss 32.

Plaintiff counters that the prior innocent mistakes of it and its counsel should not be held against it now under this equitable doctrine.  It also urges that, because the issue of patent title was never raised in those other courts, it has not affirmatively misled any of the courts.  Thus the reasons for the doctrine do not apply here.  Further, it argues that defendant has not shown any particularized harm or any unfair advantage gained by SecurityPoint due to its earlier mistake in district and bankruptcy court.

Although we are not sanguine with the repeated mistakes made by plaintiff and its affiliates, not to mention counsel--words do matter--we find that application of judicial estoppel to these facts is inappropriate.

Notwithstanding the filing of the complaint against Adason, New Media did not undertake any effort to persuade the district courts of its title to the patent as the issue was not litigated.  Thus we do not view what occurred as a conscious  deception.  Mistakes were made, but we are not persuaded they were anything but innocent.  *See Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3rd Cir. 1953) (stating that it is "intentional self-contradiction . . . used as means of obtaining unfair advantage" that the doctrine should prevent). Further, defendant has not shown how it has been unfairly prejudiced.  It was not a party to the earlier suits, it has not been forced to defend multiple suits asserting the same patent, nor has the case been made that plaintiff has gained an unfair advantage in this litigation.  In sum, under these circumstances, judicial estoppel will not preclude plaintiff from asserting its ownership of the patent.[5]

## CONCLUSION

In conclusion, we find that the 2003 assignment from Mr. Ambrefe to Security Point Media, Inc. was effective to create a chain of title that can be traced to the current plaintiff.  We find the application of the equitable doctrines of collateral and judicial estoppel against plaintiff here not to be warranted by the facts.  Standing is thus established.  Accordingly, defendant's motion to dismiss is denied.  This case will proceed to trial on damages.

s/Eric G. Bruggink
ERIC G. BRUGGINK
Senior Judge

---

[5] We note also that the courts are generally reticent to apply the doctrine of judicial estoppel to establish jurisdictional facts or positions. *See, e.g.*, *Whiting v. Krassner*, 391 F.3d 540, 544 (3rd Cir. 2004); *Palafox v. Street Assocs., L.P. v. United States*, 114 Fed. Cl. 773, 785 (2014) (surveying cases in various circuits declining to apply the doctrine to confer or prevent jurisdiction). Standing is one such jurisdictional position.