# In the United States Court of Federal Claims

No. 11-268C
(Filed: April 16, 2019)
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SECURITYPOINT HOLDINGS, INC.,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*.

Motion to compel; Privilege logs; RCFC 26(b)(5)(A)(ii); Attorney-client privilege; Waiver; Common interest doctrine; Work product doctrine.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

Pending now is defendant's second renewed motion to compel documents withheld as privileged, filed on February 26, 2019. This motion again concerns defendant's attempt to probe plaintiff's finances, valuation of its intellectual property, and any outside investors in SecurityPoint or funders of the litigation. We have previously protected the disclosure of plaintiff's litigation funding agreements based on the representation of counsel that none of them include "any transfer of rights or interest in enforcement of the patent or management of the litigation." Tr. 21 (Nov. 1, 2017 hearing) (ECF No. 303). At that same hearing, plaintiff agreed to produce documents related to ownership and valuation documents related to an outside investor in SecurityPoint, Raptor. In July 2018, as part of a sanction against plaintiff for failure to fully produce Raptor documents, we ordered plaintiff to produce all remaining documents related to Raptor and any other outside investors in SecurityPoint or potential outside investors "to the extent that they are not privileged." Order Granting Mot. For Sanctions 6 (July 17, 2018) (ECF No. 359). We also ordered plaintiff to maintain a privilege log for all documents withheld and to produce it to defendant.

Those productions have taken place, and the period for discovery has ended. Defendant, however, timely filed a motion challenging the

sufficiency of the privilege logs produced by plaintiff and asking for unredacted copies of certain documents. As a remedy for the alleged insufficient logs, the government requests that the court review a representative sample *in camera* to confirm what defendant believes are inappropriate claims of privilege. Defendant's motion names 1465 entries in those logs as problematic. By the time of oral argument, defendant clarified that it was maintaining its challenge as to only documents appearing in that list that do not have an attorney listed in the sender or receiver box of the log; the rest of their challenges have been abandoned. There are two noted exceptions that receive special treatment in defendant's motion: 1) Oxford Valuation Partners Report; and 2) The Prepaid Forward Purchase Agreement. We begin with the more general issue of the sufficiency of plaintiff's privilege logs.

I. SecurityPoint's Logs

Defendant argues that plaintiff's privilege logs are insufficient under Rule 26 because they fail to adequately "describe the nature of the documents" withheld and fail to do so "in a manner that . . . will enable the other party to assess the claim" of privilege. RCFC 26(b)(5)(A)(ii). Defendant finds particularly troublesome the lack of document titles and email subject lines disclosed. As defendant puts it, "[n]one of the entries include any clue as to the content of the document." Def.'s Mot. 5 (ECF No. 397). As mentioned above, defendant has abandoned this argument as to documents listing an attorney as a sender or receiver. It maintains its request to produce those documents that do not list an attorney as the sender or receiver, many which involve a transmittal from SecurityPoint personnel to individuals at plaintiff's investor, Raptor.

Plaintiff responds that it has disclosed more than enough information in its logs to comport with Rule 26. It notes that its description of documents is much more forthcoming of relevant information than mere document titles or email subject lines would be and argues that the date, senders, receivers, privileges asserted, and description of documents withheld—the information disclosed for each entry in its logs—should be sufficient for defendant's purposes. As a general matter, we agree.

A survey of the caselaw from this circuit reveals that the rules do not require a monolithic form of privilege logs. *See Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 91 (2007) (quoting the advisory committee notes from FRCP 26(b)(5)). What is necessary is that the log be sufficient to

disclose the nature of the document withheld and the basis for withholding with enough detail for the other party to assess the claim of privilege. Although defendant argues that the logs are wholly insufficient, its own briefing largely belies the point.  It lists several categories of documents that it challenges as not privileged: documents disclosed to non-essential decision makers within SecurityPoint; documents disclosed to Lisa Smithson and employees of her company as agents or consultants but not for purposes of legal advice; documents disclosed to other third parties; and documents sent from plaintiff to Raptor (and vice versa).  Defendant's papers take aim at the claimed privileges within those tranches of documents.  This reveals that, instead of a facial challenge to the sufficiency of the logs, defendant disagrees with plaintiff's assertion of attorney-client privilege or work product doctrine or believes a waiver of those protections has taken place as to a host of documents.  We thus conclude that no remedy would be appropriate for the mere condition of the logs themselves.[1]

What thus remains at issue after defendant's abandonment of other claims at oral argument are those documents within the above-mentioned categories that do not list an attorney in the sender or receiver line.  These are primarily documents exchanged between Raptor and SecurityPoint.  As we understand it, defendant's principle claim is not that these documents contain information other than legal advice but that their disclosure by plaintiff to Raptor is a waiver of the protection of that advice.  Plaintiff's counter-assertion is that the common legal interest it shares with Raptor, namely the validity of the patent, protects the disclosure from waiver.  We find the common interest exception applicable and thus decline to order their production to the government.

A.  Common Interest Doctrine

Normally, a communication that is seeking or giving legal advice that is disclosed to a third party waives the attorney-client privilege as to the subject of that communication.  *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 501 (2009).  The common interest doctrine, however, operates to save such communications from waiver of the privilege if that third party

---

[1] And we note that defendant stated affirmatively that it was not seeking new logs from SecurityPoint as it believed that would be a waste of time, but also as we discuss above, because, as is plain from its papers, it was able to ascertain the basis for the privileges asserted and disagreed with them by bringing the present motion.

is "allied in a common legal cause" with the client in the present suit claiming privilege. *In re Regents of Univ. Of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (quoting *In re Grand Jury Duces Tecum*, 406 F. Supp. 381, 386 (S.D.N.Y. 1975)). The third party need not be a litigant in the present suit, or any suit, but its interest shared with the party in the present suit must be a legal one, not merely commercial.[2]  *See B.E. Meyers & Co., Inc. v. United States*, 41 Fed. Cl. 729, 732 (1998). The communication must be in furtherance of that common purpose. *Kansas City Power & Light Co. v. United States*, 138 Fed. Cl. 546, 563 (2018) (citing *United States v. Schwimmer*, 892 F.2d 237, 243 (2nd Cir. 1989)).

We hold that SecurityPoint and Raptor share a common legal interest in the validity of the patent-in-suit, which is at issue in this lawsuit. Raptor is an equity investor in SecurityPoint, and, as such, it has a common interest in the legal status of the '460 patent sufficient to protect its communications with SecurityPoint (and vice versa) regarding this lawsuit and other legal questions concerning the patent.[3]

B. SecurityPoint Employees and Consultants

Defendant's motion also specifically calls out several other sub-categories of documents as being subject to waiver of any privilege asserted: documents and communications shared too broadly within SecurityPoint itself and those shared with Lisa Smithson and employees of her accounting firm.

---

[2] Defendant's motion posits that disclosure to a non-attorney would not invoke the common interest rule, but we find no support for that rule in the caselaw. The case cited by defendant from the Third Circuit was applying a specific Delaware evidentiary rule that mandated that conclusion. *In re Teleglobe Comm'n Corp.*, 493 F.3d 345, 364-65 (3rd Cir. 2007) (applying Del. R. Evid. 502(B)(3)). The court there noted that the Restatement of Law Governing Lawyers did not "emphasize this requirement, though it appears in the plain text of the relevant Delaware evidentiary rule." *Id.* at 364 n.21.

[3] As we now understand, Raptor also has a separate contractual relationship with plaintiff through a litigation funding agreement. Because Raptor has a pre-existing equity investment in SecurityPoint, we do not reach the question of whether a litigation funding arrangement alone would be sufficient to establish a commonality of legal interest.

1.  Management

Defendant argues that the privilege logs reveal a wide distribution of communications claimed to contain legal advice among employees of SecurityPoint.  This defendant believes is a waiver of the privilege because these employees are not themselves decision makers as relates to the legal advice nor were they otherwise necessary to the decision making regarding that advice.  For example, they were not acting at the behest of a corporate superior who directed them to obtain legal advice or provide information to the corporate attorney.  Disclosure of privileged information to persons within a corporation that do not have a need for that information is a waiver of the attorney-client privilege.  *See Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3rd 585, 598 (S.D.N.Y 2015).

The four documents cited by defendant as examples in its brief, however, paint a different picture and perhaps raise a different issue for plaintiff.  Only two "lower level" employees are among the names found in the sender and receiver boxes in the logs.[4]  Plaintiff represents in its opposition that one is an administrative manager and the other a "strategic account manager."  Plaintiff also argues that, in a small company such as SecurityPoint, any type of management position would properly be considered necessary for the sending and receiving of legal advice.  We agree.  No broad dissemination has been shown, and we are persuaded that any legal advice shared among managers at SecurityPoint, a small business, would be proper.

The other issue raised by the logs is that the legal advice or work product claimed as protected in these log entries involves disclosure to third parties.  For several of them, plaintiff claims that the third parties, Dex Imaging and Infocus Design, are consulting experts and covered by the privilege.  Those involving Ms. Smithson, we discuss below.

There are a few entries involving entities other than plaintiff and Raptor throughout defendant's list of challenged entries.  Plaintiff has not undertaken to explain each and every entry other than to rest on its descriptions provided by its logs or those specifically mentioned above in the briefing.[5]  Nor, on the other hand, has defendant made more specific

---

[4] Other names appearing in those entries, Mr. Ambrefe and Mr. Linehan, are principals or high level employees of the company.

[5] As to Dex Imaging and Infocus Design, plaintiff demurs from answering

5

arguments in its briefing as to these others not mentioned above.  In fact, the first two cited examples in this section above have been abandoned by the government as they do not appear in the revised list of challenged entries that appears in defendant's reply brief.   Although we are mindful that it is plaintiff's burden to show that the privilege is properly invoked, in light of our holding that the logs themselves are not deficient, we are not presented with a reason to order their disclosure absent a more concrete argument as to why they should be.  We are left with the default that the privilege logs have properly asserted the privileges claimed for these entries.

2.  Lisa Smithson

Similar to the category above, disclosure of legal advice to agents of the corporation for a purpose other than rendering or obtaining legal advice is a waiver, which defendant believes has taken place as it regards Lisa Smithson and employees of her accounting firm.   Ms. Smithson is the Corporate Financial Officer of SecurityPoint, and her firm provides accounting services to plaintiff.  Defendant raises the issue that, since she is an accountant and her firm provides accounting services, the privileges invoked may be improper as the communications were for business and financial purposes rather than for giving or receiving legal advice or preparing documents for litigation.

Plaintiff retorts that, as the company's CFO, Ms. Smithson is entitled to review legal advice provided by counsel without any waiver arising and is further entitled to disseminate that advice to necessary individuals without waiving any privileges.   Plaintiff also points out that it has produced hundreds of documents from Ms. Smithson to defendant already, which, in its view, shows that it has properly applied the relevant question of whether Ms. Smithson (and her company) were acting merely as accountants or were reviewing legal advice properly provided to the company as it pertains to the relevant documents.  We agree with plaintiff.  SecurityPoint has shown a

_____

those allegations in its briefing as it claims that the issue was not properly raised by plaintiff in its pre-motion meet-and-confer.  It states, however, that it would endeavor to provide more information to defendant.   These challenged entries do not appear again in defendant's reply brief nor were they mentioned at argument.  We note that the entry involving Dex Imaging was left off defendant's final list of challenged entries.  We are left in much the same position as plaintiff: without a reason to delve into the issue more deeply.

valid reason that the privilege would apply to these documents.

## II.  Oxford Valuation Report and Prepaid Forward Purchase Agreement

The bulk of the briefing concerns two documents, initially withheld, then produced after defendant's motion in redacted form to defendant.  The first is a valuation of plaintiff's stock that contains counsel's views of the value of the present litigation, including likelihood of success and particular recovery scenarios.  The second is a litigation funding agreement involving Raptor and other parties.  We consider each in turn.

### A.  Oxford Valuation Report

The Oxford Report was authored by Oxford Valuation Partners in 2016 and was commissioned by plaintiff to provide an independent valuation of SecurityPoint's stock.  It is the only such valuation known by defendant to exist.  Plaintiff originally withheld the entirety of the document from defendant, then produced it with pages 39-62 entirely redacted, and now, after the present motion, has produced it largely in its original form but with many numerical figures withheld, including those that could be used to "reverse engineer" the predictions and valuations provided by plaintiff's attorneys.

Defendant challenges the withholding of any information in the document on the basis that the legal advice provided to SecurityPoint in the report has been disclosed to an independent third-party, Oxford, and thus the protection is waived.  Plaintiff argues that Oxford was acting as an agent of it by preparing the report and including the advice of counsel at plaintiff's behest.  We conclude, however, that the disclosure to Oxford was a waiver.[6]

The report is clear that its purpose was to value SecurityPoint's stock as of July 1, 2016, a non-legal purpose.  Defendant presents evidence from plaintiff's contemporary board meeting that the report was commissioned to

---

[6] Although we are sympathetic to plaintiff's point that the information withheld as privileged, standing by itself, would not be relevant to the underlying issues in the lawsuit, it is contained within the context of a document that is relevant to issue of damages, and because the report inextricably wound counsel's valuations of the litigation into the company's stock value, the information cannot be neatly sequestered without ruining much of its value to defendant.

complete a deferred compensation valuation under I.R.C. § 409A. The report itself states that it can be used in compliance with that tax provision. Subsequent events further confirm the purpose, as defendant lays out in its brief. Thus, even if the author was acting as an agent of plaintiff, the reason for disclosing the legal advice to Oxford was not for the purpose of giving or receiving legal advice. Further, Oxford was not acting as an agent of SecurityPoint nor was it merely a conduit of information between counsel and client. It was Oxford that authored the report and exercised its judgment in how to use the information provided by counsel. It was commissioned to provide an independent valuation of the stock, and the rights to the use of the report are limited by the cover letter and attached "statement of limiting conditions." *See* GA 71-72. In sum, we are persuaded that no privilege attaches to the Oxford Valuation Report because any privilege over the advice given by counsel has been waived by disclosure to Oxford, and the document must be produced in unredacted form to defendant.

B. Prepaid Forward Purchase Agreement

The final item for our consideration is an agreement between SecurityPoint and Raptor that provides for funding of the litigation by Raptor up to an agreed upon amount in exchange for a priority return of those funds should plaintiff recover them in this lawsuit and an additional return on investment if the proceeds of the lawsuit allows. The document, like the Oxford Report, was initially withheld from production on the basis of work product protection and because we found litigation funding matters to be irrelevant based on counsel's representation that no such agreement included an exchange of rights in the patent or control over the litigation. An amendment to the Prepaid Forward Purchase Agreement ("PFPA") was produced, however, the language of which suggests to defendant that plaintiff's counsel's representations were less than wholly forthcoming and that some control of the litigation was ceded to Raptor and other investors.[7] Plaintiff in turn has produced almost all of the original PFPA with certain limited redactions. Defendant believes it is entitled to those redacted entries now.

Litigation funding agreements are often considered by the federal courts to be protected by the work product doctrine or as otherwise irrelevant to the issues at hand. *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d

---

[7] The amendment to the PFPA added several additional parties as funders of the litigation.

711, 730-39 (N.D. Ill. 2014); *Lambeth Magnetic Structures, LLC v. Seagate Tech. (US) Holdings, Inc.*, Civil Action No. 16-538. 2018 WL 466045, at *5-6 (W.D. Pa. Jan. 18, 2018) (order denying motion to compel).  In the context of litigation with the federal government, however, defendant points out that the Assignment of Claims Act, 31 U.S.C. § 3727 (2012), might make certain provisions relevant to the enforcement of that statute in the litigation or whether necessary parties have been joined.  Plaintiff counters that the PFPA is irrelevant to any issue at bar and that the redacted version provided to defendant ought to assuage any concerns regarding assignment of claims or joinder.  Plaintiff also disputes defendant's characterization of its prior representations to the court and draws a fine distinction in that it represented to the court that it had no traditional litigation funding arrangements.  This is so, in its view, because Raptor has a pre-existing equity interest in SecurityPoint and is thus not like a traditional outside funder of litigation.  Plaintiff maintains its position that the PFPA does not give any control over the litigation to any third parties nor any interest in the patent.

We begin with the initial issue of misrepresentation to the court.  Although plaintiff's distinction between a classic litigation funding agreement and one made with a party with whom the litigant has a pre-existing equity arrangement may have been made in good faith, it certainly was not a distinction that the court could have drawn from merely how the representation was made.  Further, plaintiff has not explained how the other entities added as funders by the amendment to the PFPA fit within that definition.  That said, we do not see a lack of candor with the court or an attempt to affirmatively misrepresent.

There is also the representation that no control of the litigation nor interest in the patent was conveyed.  Generally, we agree that, by the terms of the agreement, plaintiff maintains control of the litigation, but an override provision is afforded to the investors should they be of the opinion that plaintiff is acting in bad faith by settling or refusing to settle the case.  The agreement resolves such a dispute by referring it to binding arbitration.  Again, we find that a good faith distinction between the two positions is possible and thus no intent to deceive the court is inferred, but the issue of relevance remains.

It is clear that several of the redactions are merely percentages of recovery and funding that are not implicated by any of the concerns raised by defendant; there are also several entries, however, that may shed further light on the rights and interests of the parties to the PFPA as it pertains to

control of the litigation.  We simply cannot tell from the context alone, and we are not in a position to opine on the ultimate importance, or not, of these provisions as they pertain to any of the potential issues raised by defendant. Therefore, a legitimate need may be present that overcomes a relevance objection, but the question of work product protection remains.  We previously ruled that funding of the litigation was off limits to the government.  Defendant has raised a potential need for the information now due to assignment or joinder.  Because work product protection is not inviolable and can be overcome by a showing of need, the inquiry is not over. The court will have to assess the issue by reviewing the unredacted provisions *in camera*.

III.  Conclusion

        Accordingly, the following is ordered.  Defendant's motion is granted as it pertains to the Oxford Valuation Report.  Plaintiff must produce it in whole to defendant.  Plaintiff is furthered ordered to provide an unredacted copy of the PFPA to the court for review *in camera* on or before April 23, 2019.  Defendant's motion is denied in all other respects.

                                        s/Eric G. Bruggink
                                        ERIC G. BRUGGINK
                                        Senior Judge