# In the United States Court of Federal Claims

No. 11-268C
(Filed: March 16, 2020)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| SECURITYPOINT HOLDINGS, INC., | Motion for partial summary judgment; RCFC 56(b); RCFC 1; Implied license by conduct and statements; Economic duress; 28 U.S.C. § 1927; Unnecessarily duplicating proceedings. |
| *Plaintiff,* | |
| v. | |
| THE UNITED STATES, | |
| *Defendant.* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Bradley C. Graveline*, Chicago, IL, with whom were *Laura M. Burson*, Los Angeles, CA, and *April E. Weisbruch*, Washington, DC, for plaintiff.

*Gary L. Hausken*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Joseph L. Hunt*, Assistant Attorney General, Washington, DC, with whom were *Conrad J. DeWitte, Jr.*, *Lee Perla*, *Carrie E. Rosato*, *Brian N. Gross*, and *Shahar Harel*, for defendant.

ORDER

BRUGGINK, *Judge*.

Defendant moves for partial summary judgment that plaintiff has granted an implied license to the government for the use of the '460 patent at airports in which SecurityPoint has an agreement to operate. Defendant moves on two grounds: 1) that plaintiff's contractual relationship with airport operators, or their agents (advertising brokers), implies a grant of license to the Transportation Security Administration ("TSA") to use the method of plaintiff's patent in those airports, and 2) that plaintiff is judicially estopped from asserting otherwise due to the positions it has taken against the United

States before the United States Court of Appeals for the District of Columbia.

Plaintiff opposes the motion and has separately filed its own motion *in limine* regarding the issue, asking the court to preclude evidence and argument of an implied license.  Defendant cross-moved after plaintiff's motion, asking for its fees and costs in responding to plaintiff's *in limine* motion, citing 28 U.S.C. § 1927, which gives federal courts the power to levy the cost of responding to duplicative and excessive filings against those that file them.  All three motions are fully briefed.  We deem oral argument unnecessary.

I. Background and Arguments[1]

Plaintiff began soliciting TSA in 2002 to provide its system of trays and carts for security screening in exchange for the right to sell advertising on the trays.  SecurityPoint repeatedly told TSA that there would be no cost to the government.  TSA eventually implemented the Bin Advertising Program, which allowed airport operators to enter memoranda of understanding ("MOU") with TSA to allow SecurityPoint, or other contractors,[2] to provide the physical trays and carts to TSA.  SecurityPoint then enters a separate agreement with the airport operator for the right to place advertising on the trays, usually in exchange for a cut of that revenue. No privity between TSA and plaintiff exists under these arrangements.

Plaintiff has since contracted with airport operators or advertising brokers in over 30 airports nationwide, including nine of the fifteen busiest. Plaintiff's damages expert has included those airports in his calculations of royalty damages from 2008 forward but has reduced his total figure by the amount of revenue that plaintiff has generated at those airports.

Defendant points out that plaintiff has on several occasions made the representation in the present litigation and separately to the D.C. Circuit that TSA operates with an implied license in those contracted airports.[3]  The

---

[1] These facts are drawn from the parties' briefing and are not in dispute.

[2] Presumably with a license from SecurityPoint.

[3] The record in both cases is replete with such representations.  *See, e.g.*, *SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 769 F.3d 1184, 1188 (D.C. Cir. 2017) (stating that plaintiff's position was that TSA had the

government thus argues that both plaintiff's affirmative conduct in providing the trays and carts to TSA at the contracted airports and its representations in court are reason enough to preclude compensation for TSA's use of plaintiff's patented method at those airports.

SecurityPoint first responds that the motion comes too late because it is one day beyond Rule 56(b)'s 30-day window after the close of discovery for the filing of motions for summary judgment. On the merits of the question posed by defendant, SecurityPoint argues that defendant's amendment of the MOU to require airports to indemnify TSA for any intellectual property infringement shows that the government never relied on plaintiff's conduct as granting a license. Plaintiff also avers that defendant has not shown, nor made any attempt to show, when the implied licenses would have been in effect at the contracted airports, whether the licenses covered all of the security lanes at those airports, and whether the licenses covered all claims of the patent. Finally, plaintiff also raises the defense of duress, arguing that any license granted was the result of economic duress stemming from TSA's decision to take plaintiff's method and apply it nationwide.

On the issue of whether it should be estopped from claiming damages for the use at SecurityPoint-contracted airports, plaintiff argues that its positions in the two suits are not inconsistent because the scope of the license has not been taken up by either court. It also argues that the D.C. Circuit did not rely on its license argument and that plaintiff has garnered no unfair advantage because it only began claiming damages from these airports due to defendant's inability to provide any useful data in discovery as to how much passenger throughput should be deducted at licensed airports.

Plaintiff's motion *in limine* purports to raise a *Daubert* issue with regard to defendant's expert's use of the implied license in his damages calculations. SecurityPoint argues, for the reasons listed above, that Mr. McGavock's method of calculating damages is not reliable and should thus be precluded by the court along with any argument regarding an implied license.

---

"benefit of an implied license to practice the invention . . . at any airport covered by an agreement between SecurityPoint and the airport operator"); *SecurityPoint Holdings, Inc. v. United States*, No. 11-268C, Claim Construction Hr'g Tr. 10, 57 (Nov. 14, 2012); Summ. J. Oral Arg. Tr. 134-135 (Feb. 21, 2014).

II. Implied License

As a preliminary matter, we find defendant's motion timely. Rule 1 establishes that the court's rules are to be construed and administered to "secure the just, speedy, and inexpensive determination of every action and proceeding." RCFC 1. Plaintiff has presented no good reason why this matter of law should not be addressed now. Had the court anticipated it, we would have included a deadline for such a motion, and Rule 56(b) would not be implicated. We could not have anticipated the need to address this issue any earlier, however, because plaintiff has long maintained in this action, and elsewhere, that TSA operated with its implied blessing at those airports at which SecurityPoint is contracted to provide trays and carts. We thus decline to apply Rule 56 in these circumstances. The motion is timely.

A. Plaintiff's Conduct and Statements Establish an Implied License

We begin with the question of whether plaintiff's conduct implied a grant of license to TSA. We conclude, as a matter of law, that it does. *See Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ("the existence of an implied license[] is a matter of law"). A right to use a patented invention is implied when the patentee gives an affirmative grant of consent or permission to the alleged infringer through statements or conduct upon which the infringer reasonably relies and thus would be materially prejudiced if the patentee then proceeded to make a claim of patent infringement. *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001). Although the burden is on the infringer, *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 924 (Fed. Cir. 1984), no material questions of fact are in dispute as to the existence of such a license.

It was SecurityPoint that twice solicited the government with an offer to supply TSA with its system and the materials needed to execute its patented method. It repeatedly told TSA, as it has this court, that the supply of trays and carts would come at no cost. TSA eventually took plaintiff up on that offer and created the program that remains in place today to allow airport operators to contract with SecurityPoint to supply its system and materials. It would be absurd to assume that no right to use the implements in the manner patented by plaintiff accompanied the deal. *Cf. Gen. Elec. v. United States*, 572 F.2d 745, 784-85 (Ct. Cl. 1978) (holding, *inter alia*, that the supply of unpatented components of an invention to the government resulted in an implied license to assemble and use those components in the patented manner).

4

There is no serious argument that plaintiff has not offered its system to the government free of charge. Plaintiff's point rather is that TSA's subsequent actions—particularly its change to the standard MOU to require patent liability indemnity from the airports—show that the government did not rely on SecurityPoint's conduct as having granted a license. We disagree.

When TSA made its change to the MOU, it did not require the existing agreements to be modified. *SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 867 F.3d 180, 184 (D.C. Cir. 2017). After a remand by the D.C. Circuit, TSA explained its revision to the MOU as the result of "a comprehensive review of TSA agreements to ensure the inclusion of appropriate intellectual property provisions" undertaken after the hiring of a new agency attorney. *Id.* It stated to the circuit court that the indemnity language was broad and not specific to SecurityPoint because it was meant to be a comprehensive shield from liability arising from any patent that might cover the methods or materials used in security screening. *Id.* The court accepted that explanation and found it reasonable. *Id.* at 199. From these two facts, we draw the conclusion that the change to the MOU does not suggest a lack of reliance on an implied license on the part of TSA. The decision not to change the existing MOUs rather is evidence that TSA continued to view its liability as limited *vis-à-vis* SecurityPoint due to the implied license—the very same license that plaintiff has repeatedly told the courts that it granted to TSA. Further, the broad nature of the indemnity provisions makes them irrelevant to the question of whether TSA relied on SecurityPoint as having granted it a right to use the patented method. The provisions were not specifically targeted at plaintiff.

The government would be prejudiced if a license was not implied against plaintiff for those airports where SecurityPoint is supplying the trays and carts because its conduct would almost certainly have been different without the right to use the patented method. Although TSA took no steps to limit its liability in airports without Bin Advertising Program participation, that does not suggest that its course would be the same in those airports where the program was in place. It likely would have insisted on revising the MOU already in place at those airports or ending the program prematurely. We do not view this as an open fact question—nor does plaintiff argue that it is one—because requiring defendant to prove what it might have done under other circumstances would be unfair to it in view of plaintiff's acquiescence. Defendant would be prejudiced if a license is not implied.

B. There is No Question of Fact Regarding Duress

As to the argument that a fact question regarding duress ought to prevent summary judgment, we disagree. Plaintiff offers not a scintilla of evidence that it was in any way coerced to sell advertising in exchange for providing trays and carts. Instead, it cites the timeline of events, arguing that its advertising agreements are merely an attempt to mitigate damages after defendant began appropriating its intellectual property. Plaintiff thus believes that the economic incentives worked as duress to force it to enter into these agreements. Even if credited, that would be insufficient as a matter of law to constitute coercion.

As the Court of Claims explained in *Fruhauf Southwest Garment Co. v. United States*, economic duress will only void an agreement where one side accepted the terms involuntarily because the circumstances permitted no alternative and that acceptance resulted directly from the coercion of the other party. 126 Ct. Cl. 51, 62 (1953). We have nothing of the sort here. It was plaintiff, in fact, that approached the government, prior to TSA's use of the patented method, with an unsolicited proposal to begin supplying its system and materials to the government in exchange for the right to place advertising. The business model was the same before and after the date of first infringement. It would be silly to argue that a license granted or implied after the date of infringement is invalid *ab initio*.[4] Such a license simply operates to limit future liability, as it will here. 28 U.S.C. § 1498 militates against the idea that the circumstances provided no alternative to SecurityPoint. Plaintiff has a remedy at law for the unauthorized use of its method. It wisely continued its business of supplying trays and carts to TSA where it could pursaude airport operators to let it display advertising, and the effect of those arrangements implies a license to use plaintiff's method. There was no legal duress.

C. The Scope of the Licenses is Not Clear

The issue of the implied license is not entirely resolved, however. We do not know the time period of the licenses at various airports and whether those licenses would include lanes at which SecurityPoint was not operating. On those two questions, we agree with plaintiff that the scope of the licenses

---

[4] In fact, plaintiff does not allege that its contracts with airports are unenforceable due to duress. It avers instead only that any implied license flowing from such agreements would be void as the product of duress.

is unclear.

We can say with confidence, however, that there is no outstanding issue as to whether the implied license would include the steps contained in independent claim 1. Plaintiff argues that its license may only have granted use of the patent's dependent claims that the trays be adapted for displaying advertising since that is what SecurityPoint's agreement with the airports concerns: advertising.

As defendant points out, however, that position is irreconcilable with basic patent law. Dependent claims incorporate the independent claim or claims on which they are founded because the independent claims provide the patentable novelty. 35 U.S.C. § 112 (2012) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). *See Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 498 F.3d 982, 995 (Fed. Cir. 2007). Thus, even if we agreed that the licenses implied by the agreements between plaintiff and the airport operators were limited to dependent claims 4 and 14, they would necessarily cover the steps included in independent claim 1.

The only issues remaining for trial are the scope of the particular licenses as to timing and the number of lane included at those airports. Because we find that the circumstances establish an implied license, we need not reach the question of judicial estoppel.

III. SecurityPoint's Motion *In Limine*

The existence of an implied license established, the principle basis on which plaintiff moved *in limine* disappears. Because we find an implied license to have been granted for those airports in which SecurityPoint operates, it is not problematic for Mr. McGavock to have taken that fact into account in his measurement of damages. His analysis is neither confusing nor inherently unreliable for that reason.

Plaintiff also urges that it has already accounted for the facts relied on by the court and defendant by excluding from its damages calculation the amounts of revenue already generated at the airports in which SecurityPoint operates. Nothing further should be imputed against SecurityPoint, plaintiff argues, because it would be fundamentally unfair to force it to choose between 1) going out of business and suing the government for infringement or 2) merely accepting whatever terms it could get after infringement but lose

the right to compensation at those airports. That false bifurcation is unsupported by the facts. Plaintiff was not at the mercy of TSA when it negotiated with the airports and advertising brokers that it did. Plaintiff's business model was unchanged before and after infringement. We find no reason to limit defendant's introduction of evidence and argument regarding implied licenses. Plaintiff's motion is denied.

That leaves only defendant's cross-motion that the cost of responding to plaintiff's motion *in limine* should be shifted to plaintiff because it is unnecessarily duplicative of the issues addressed by the briefing in defendant's motion for summary judgment. We agree with defendant. As explained above, the basis for plaintiff's motion to exclude is the same as its opposition to defendant's summary judgment motion: it does not believe an implied license is proper on the facts presented and the equities as they are. It did not require another motion and series of briefs to flesh out those issues. Plaintiff presented no separate argument under the *Daubert* standard as to why Mr. McGavock's opinion was unreliable. There was no reasonable basis for filing a separate motion *in limine*. We thus shift the cost of defendant's response to the plaintiff pursuant to 28 U.S.C. § 1927.

Accordingly, the following is ordered:

1. Defendant's motion for partial summary judgment (ECF No. 428) is granted to the extent that an implied license exists for those airports at which SecurityPoint has an agreement to operate and at which it provide its trays and carts to TSA. The motion is denied with respect to the precise scope of those licenses regarding timing and whether all lanes were included at all of those airports.

2. Plaintiff's motion *in limine* (ECF No. 434) is denied.

3. Defendant's cross-motion for unduly multiplying proceedings is granted and its cost of responding to the motion *in limine* will be borne by plaintiff.

4. The parties are directed to confer and attempt to agree upon the proper amount to be remitted to the United States for the cost of responding to plaintiff's motion. The parties shall file a status report on or before April 6, 2020, with the agreed upon amount, or if not agreed upon, their respective positions. The parties should consult our September 14, 2018 order to resolve questions of the appropriate

rate.

>                         s/Eric G. Bruggink
>                         ERIC G. BRUGGINK
>                         Senior Judge